IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF FLORIDA

TALLAHASSEE DIVISION

Case No. 4:25-CV-00320

**SUSAN JENNINGS**, Plaintiff,

v.

**DONNA CHRISTINE THURMAN,** individually and in her official capacity as Guardian ad Litem, **BARBARA HOBBS**, in her individual capacity, and **TRUDY INNES RICHARDSON**, individual capacity, **JOSE ERIC ARENAS FREDES**, and **MARY ELIZBETH ARENAS**

Defendants.

_____/

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, DUE PROCESS, VIOLATIONS to 14th AMENDMENT, CIVIL CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS, RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHTS, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

**Plaintiff, SUSAN JENNINGS,** by and through her own representation, brings this civil rights complaint pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution, and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights jurisdiction).

2. Venue is proper in the Northern District of Florida under 28 U.S.C. § 1391(b), as the events giving rise to this complaint occurred in Leon County, Florida, within this judicial district.

### PARTIES

3. Plaintiff **Susan Jennings** is an adult resident of the State of South Carolina and is the biological mother of minor children M.R.A. and S.N.A.


FILED USDC FLND TL
JUL 30 '25 PM 2:52

4. Defendant **Donna Christine Thurman** is a Florida attorney and was appointed as Guardian ad Litem (GAL) in family law proceedings involving Plaintiff and her children. She is sued in both her individual and official capacities.

5. Defendant **Barbara Hobbs** is a judge of the Second Judicial Circuit Court of Florida. She is sued in her individual capacity for actions taken outside the scope of judicial immunity.

6. Defendant **Trudy Innes Richardson** is a private attorney who acted in concert with the above state actors under color of law and is sued in her individual capacity.

7. Defendant **Jose Eric Arenas Fredes,** individual in Leon county FL

8. Defendant **Mary Elizabeth Arenas,** individual in Leon county FL

## FACTUAL ALLEGATIONS

9. Plaintiff was involved in an ongoing custody dispute in Case No. 2018-DR-649 in the Second Judicial Circuit Court in Leon County, Florida.

10. Defendant Thurman was appointed as the GAL around 2020, at the request of Richardson, who is opposing counsel representing the father.

11. Defendant Thurman and Richardson both belong to a business and professional organization known as Capital Collaborative Group. Defendant Thurman is or has been the Chairperson, President, and owner of this group; Defendant Richardson is a member.

12. Neither Defendant Thurman nor Richardson disclosed their shared affiliation to the Court, creating an undisclosed conflict of interest which materially affected the fairness of the proceedings. Thurman served as President and Chairperson of Capital Collaborative Group during the relevant period, while Richardson was an active member. Their close professional affiliation was concealed from the court and opposing parties, in direct violation of legal ethics and conflict-of-interest rules (see Fla. R. Prof. Cond. 4-1.7)."

13. Plaintiff alleges that Defendant Thurman and Richardson coordinated to manipulate the custody process, fabricate claims against Plaintiff, and alienate her from her children without proper cause or due process.

14. Defendant Thurman made biased and malicious recommendations that directly led to Plaintiff losing time sharing with her children, despite no formal adjudication of unfitness.

15. Plaintiff alleged that Defendant Richardson advised her client, the children's father, to unlawfully access Plaintiff's private phone contents and transmit them to Richardson for use in the final hearing. This was not only an invasion of privacy but also a coordinated effort to gain improper advantage in the custody case at the September 2020 final hearing. When

Plaintiff reported this criminal act, Defendant Thurman retaliated by recommending suspension of Plaintiff's parental time, characterizing her as unstable for having reported the crime and civilly suing the father.

**16.** Defendant Thurman ignored credible reports and evidence of lies, abuse or psychological harm to the children by the father, in violation of mandatory reporting requirements.

**17.** Defendant Thurman's actions were motivated, in part, by personal animus and retaliation after Plaintiff exposed past misconduct and questioned her professional relationships.

**18.** As a direct and proximate result of All of the Defendants' actions, Plaintiff suffered emotional distress, loss of parental time, reputational harm, and the deprivation of her fundamental rights as a parent.

**19.** Defendant Thurman, while serving in her court-appointed capacity as Guardian ad Litem, exceeded the boundaries of her quasi-judicial function by engaging in conduct not protected by immunity.

**20.** Defendants Thurman and Richardson collaborated to submit biased and fraudulent reports to the Court, violating Plaintiff's due process rights and damaging her relationship with her children.

**21.** Defendant Judge Hobbs failed to recuse herself despite having a documented history involving domestic violence and coercive control relevant to the subject matter, creating an appearance of bias and a due process conflict.

**22.** Plaintiff previously moved to disqualify Judge Barbara Hobbs due to repeated instances of judicial bias, procedural misconduct, and actions inconsistent with due process. These included:

   a) Denial of Plaintiff's right to attend or participate in key custody hearings—one of which took place on January 15, 2021, without notice or inclusion of Plaintiff, despite her Pro Se status at the time;

   b) Issuance of custody-modifying orders based on inadmissible hearsay and illegally obtained electronic communications, including private text messages accessed without consent or warrant;

   c) Persistent refusal to schedule or rule on Plaintiff's motions filed in response to appellate rulings or emergent safety concerns;

   d) A three-year+ suspension of Plaintiff's time-sharing rights without a formal finding of unfitness, supported only by unsupported and uninvestigated allegations;

   e) The imposition of constantly shifting conditions—such as psychological evaluations or therapy—without consistent judicial rationale or relief upon compliance;

   f) Denial of therapeutic services for the minor children despite Plaintiff's offer to fully fund them, directly undermining the children's mental health and best interests.

g) Denial of reunification services for the minor children and mother despite Plaintiff's offer to fully fund them, directly undermining the children's best interests.

**23.** Plaintiff alleges that Judge Hobbs' rulings were not based on law or fact but on personal animus and retaliation, especially after Plaintiff exposed the judge's prior disciplinary history and perceived conflicts of interest. These patterns demonstrate a failure to act as a neutral arbiter and directly contributed to the unconstitutional deprivation of Plaintiff's rights under the Fourteenth Amendment.

**24.** Judge Hobbs waited over 4 months and after she was removed from the case and modification trial to sign an order in place for this modification hearing on a fraudulent order provided by Defendant Richardson which deviated from official court transcript

**25.** Specifically, Defendants Thurman, Hobbs, Richardson acted outside her authorized role by:

a) Participating in extrajudicial conspiracies with opposing counsel;

b) Retaliating against Plaintiff for protected speech;

c) Making biased and malicious recommendations based on personal animus and undisclosed conflicts.

d) Failing to report credible allegations of abuse despite a statutory mandate.

e) Interfering with Plaintiff's parental rights absent a formal adjudication of unfitness or due process.

f) These actions were neither neutral nor discretionary and were taken in bad faith, motivated by personal interest and in violation of clearly established constitutional rights.

**26.** Defendants Thurman, Hobbs, Richardson is therefore **not entitled to absolute or quasi-judicial immunity**, and any such defense should be rejected based on her intentional misconduct outside the scope of her protected role.

**27.** The Florida appellate courts failed to provide review, issuing a per curiam affirmance and dismissal, leaving Plaintiff without a state remedy.

**28.** Plaintiff was granted daily telephone contact with her children between 5:30 and 6:30 PM by valid court order, which remained in full force and effect at all times relevant to this complaint.

**29.** Defendant Jose Arenas Fredes and his wife Mary Arenas engaged in a pattern of intentional interference with Plaintiff's lawful parenting time, including refusing to answer scheduled phone calls, coaching the children to be unresponsive or hostile, and denying reunification therapy services recommended by Defendant Thurman.

**30.** On information and belief, Defendants Jose and Mary conspired with Guardian ad Litem Donna Christine Thurman and attorney Trudy Innes Richardson to fabricate and present false

and defamatory allegations against Plaintiff, including claims of child abuse, drowning incidents, and parental neglect. These claims were unsupported by evidence and intended to bias the court against Plaintiff and interfere with her custodial rights.

31. These coordinated actions led to the suspension of Plaintiff's timesharing rights without due process, despite Plaintiff being fit, willing, and able to maintain contact with her children.

32. Further, on information and belief, Defendant Jose and his wife Mary, with the knowledge or assistance of GAL Donna Thurman and/or attorney Trudy Richardson, accessed or attempted to access Plaintiff's private phone data or communications without consent, warrant, or legal justification, in violation of her Fourth Amendment right to privacy.

33. These efforts were part of a broader conspiracy among the private parties and state actors to retaliate against Plaintiff for asserting her legal rights and to deprive her of her constitutionally protected relationship with her children.

34. Defendant Donna Christine Thurman, acting under color of state law as the court-appointed Guardian ad Litem, participated in this scheme by:

- Failing to protect Plaintiff's relationship with her children;
- Suppressing reunification efforts;
- Recommending or condoning the suspension of parenting time without evidentiary hearing or legal basis;
- Falsely labeling Plaintiff as mentally unwell based on her protected legal activities, such as conducting background checks on parties to her case.

35. The result of these conspiratorial and retaliatory actions was the deprivation of Plaintiff's rights to due process, familial association, and privacy, resulting in prolonged estrangement from her minor children, emotional distress, reputational harm, and permanent damage to the parent-child relationship.

36. These actions were carried out under color of state law and resulted in the violation of Plaintiff's rights under the U.S. Constitution.

## CLAIMS FOR RELIEF

### COUNT I: VIOLATION OF SUBSTANTIVE DUE PROCESS (14th AMENDMENT)

37. Plaintiff realleges paragraphs 1-36.

38. Plaintiff has a fundamental liberty interest in the care, custody, and management of her children.

39. All Defendant's, acting under color of state law, intentionally and maliciously interfered with Plaintiff's parental rights without justification or a finding of unfitness, violating her substantive due process rights under the Fourteenth Amendment.

**Legal Argument:**

- **Troxel v. Granville, 530 U.S. 57 (2000)**

the Supreme Court recognized the fundamental liberty interest of parents in the care, custody, and control of their children as one of the oldest recognized by the court. This right is considered so fundamental that it predates the court itself and has deep historical roots according to the John Paul II Renewal Center. The case, which involved a dispute over grandparent visitation rights, highlighted the presumption that fit parents act in their children's best interests.

- **Santosky v. Kramer, 455 U.S. 745 (1982)**

Children and parents "share a vital interest in preventing erroneous termination of their natural relationship." "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence.

---

**COUNT II: VIOLATION OF PROCEDURAL DUE PROCESS (14th AMENDMENT)**

40. Plaintiff realleges paragraphs 1-39.

41. Defendant Hobbs deprived Plaintiff of her right to notice, a fair hearing, and an impartial tribunal regarding her custody and parental time, in violation of her procedural due process rights.

42. The Court, under the authority of Judge Hobbs, held a critical hearing on January 15, 2021, without including Plaintiff, despite her Pro Se status. Plaintiff was denied timely notice, was not provided the Zoom link, and her inquiries for clarification were ignored. The hearing proceeded without her, resulting in the continued suspension of her parental rights based on testimony she could not cross-examine—an egregious denial of procedural due process.

**Legal Argument:**

- **Matthews v. Eldridge, 424 U.S. 319 (1976)**

established a three-part test to determine the requirements of procedural due process when a government action affects an individual's private interests. This test balances the individual's interest against the government's interest, and considers the risk of error in the procedures used.

- **The private interest affected,** This involves assessing the nature and weight of the interest that the individual stands to lose due to the government's action. For example, in <u>Goldberg v. Kelly</u>, the private interest was the termination of welfare benefits, which was considered a significant hardship. In Matthews v. Eldridge, the private interest was the termination of disability benefits, which was deemed less critical than welfare benefits.
- **The risk of erroneous deprivation through the procedures used,** This examines the likelihood that the current procedures will result in an incorrect decision that deprives the individual of their interest. It also considers the potential value of additional or substitute procedural safeguards in reducing the risk of error.
- **The government's interest,** This involves assessing the government's interest in maintaining the current procedures, including the administrative and fiscal burdens that additional or substitute safeguards would impose.

- **Gonzalez v. Reno, 212 F.3d 1338 (11th Cir. 2000)**

A parent's liberty interest in familial association must be balanced against the state's interest; however, improper procedures may support a due process claim.

## COUNT III: CIVIL CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS (42 U.S.C. § 1983)

43. Plaintiff realleges paragraphs 1-42.

44. Defendant Thurman and Richardson conspired together to deprive Plaintiff of her parental rights by agreeing to coordinate actions, recommendations, and reports based on bias and improper relationships.

45. The conspiracy resulted in the deprivation of Plaintiff's constitutional rights under color of state law.

46. Defendant Richardson encouraged her client to send her and other individuals' contents from mothers' phones which was obtained illegally for the final hearing and to suspend mothers' timesharing.

**Legal Argument:**

- **Dennis v. Sparks, 449 U.S. 24 (1980)**

the Supreme Court held that private individuals can be held liable under <u>42 U.S.C.</u> § 1983 for conspiring with a judge to deprive someone of their constitutional rights, even if the judge is immune from liability for their official actions. The Court reasoned that when private parties

conspire with a state official to violate constitutional rights, they are acting "under color of law" for purposes of § 1983.

- **Tower v. Glover, 467 U.S. 914 (1984):**

We conclude that public defenders are not immune from liability in actions brought by a criminal defendant against state public defenders who are alleged to have conspired with state officials to deprive the § 1983 plaintiff of federal constitutional rights.

- **Pfannstiel v. City of Marion, 918 F.2d 1178 (5th Cir. 1990)**

In the Fifth Circuit, a §1983 conspiracy claim requires establishing two key elements: (1) the existence of a conspiracy involving state action, and (2) a deprivation of civil rights in furtherance of that conspiracy. Specifically, a plaintiff must prove that at least two persons or entities acted in concert to violate the plaintiff's constitutional rights, and that the actions taken were under color of state law.

- **Conspiracy:** A conspiracy involves an agreement or understanding between two or more individuals to engage in illegal activity. In the context of §1983, this means an agreement to violate a person's civil rights.

- **State Action:** At least one party to the conspiracy must be acting under the color of state law. This means that the person is misusing their official authority or position to carry out the violation.

- **Deprivation of Civil Rights:** The conspiracy must result in the infringement or denial of a right guaranteed by the Constitution or federal law. For example, this could be the right to due process, equal protection, or freedom of speech.

- **Causation:** The plaintiff must also show that the conspiracy directly caused the deprivation of their civil rights. In other words, the actions taken in furtherance of the conspiracy led to the harm they suffered.

---

## COUNT IV: RETALIATION FOR EXERCISING FIRST AMENDMENT RIGHTS

47. Plaintiff realleges paragraphs 1-46.

48. Plaintiff engaged in protected speech by reporting misconduct and objecting to the unfair treatment and conflicts of interest.

49. Defendant retaliated by initiating or supporting actions that harmed Plaintiff's custody rights and reputation.

**Legal Argument:**

- **Perry v. Sindermann, 408 U.S. 593 (1972)**

The government may not retaliate against a person for exercising constitutional rights, including free speech.

- **Mt. Healthy City School District Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)**

The Supreme Court established a burden-shifting test for public employees' First Amendment retaliation claims. The ruling clarified that if an employee demonstrates their protected conduct was a "substantial factor" in an adverse employment decision, the burden shifts to the employer to prove they would have taken the same action regardless of the protected conduct.

## COUNT V: FAILURE TO PROTECT CHILDREN FROM HARM / VIOLATION OF SUBSTANTIVE DUE PROCESS (14th AMENDMENT)

**50.** Plaintiff realleges paragraphs 1–49.

**51.** Plaintiff provided All the Defendants and other participants in the custody proceedings with credible evidence of abuse and psychological harm suffered by her minor children while in the care of their father. This included direct communication, documentation, and other reports raising serious concerns about the children's welfare.

**52.** Defendant Thurman, acting under the color of state law in her capacity as Guardian ad Litem, had a statutory and ethical duty to act in the best interests of the children, which includes mandatory reporting obligations under Florida Statutes § 39.201.

**53.** Despite this, Defendant Thurman, Richardson, and Hobbs knowingly ignored, minimized, and/or suppressed these concerns and failed to initiate any protective action. Instead, Defendants actively supported efforts to reduce Plaintiff's parental time and silence her efforts to intervene. Defendants' actions and omissions created a substantial risk of harm to the children by allowing the abusive or harmful conditions to persist.

**54.** Defendant's Thurman and Hobbs conduct violated the children's right to be free from state-created dangers and deprived Plaintiff of her constitutionally protected right to care for and protect her children from harm.

**55.** Defendant Thurman initially stated she supported therapeutic intervention and reunification between Plaintiff and her children, acknowledging the need to repair the parent-child relationship. Despite this, Defendant refused to recommend or require that the father ensure the children attend the ordered therapeutic sessions.

**56.** This contradiction undermined the reunification process and placed the burden solely on Plaintiff, contrary to the children's best interests. Defendant Thurman and Hobbs refusal to involve the father in facilitating reunification demonstrates a lack of neutrality and contributed to the continued alienation of the children from their mother, despite her stated support for reunification.

57. By facilitating continued placement in an unsafe environment, discouraging reporting or investigation, and retaliating against Plaintiff for her protective actions, Defendant Thurman, Richardson, and Hobbs materially contributed to the danger the children faced and violated Plaintiff's fundamental parental rights under the Fourteenth Amendment.

**Legal Argument:**

- **DeShaney v. Winnebago County. Dep't of Soc. Servs., 489 U.S. 189 (1989):** While the state is not generally liable for harm caused by private individuals, a duty to protect may arise where the state affirmatively places a child in danger or has created or exacerbated the risk.
- **Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998):** The state-created danger doctrine allows liability where state actors create or increase the risk of harm and the plaintiff is a foreseeable victim.
- **Meeker v. Kercher, 782 F.2d 153 (10th Cir. 1986):** A guardian ad litem may not be entitled to immunity when they fail in their duties or act outside their protected role.

## COUNT VI: DEPRIVATION OF PARENTAL RIGHTS WITHOUT CLEAR AND CONVINCING EVIDENCE (14th AMENDMENT)

58. Plaintiff realleges paragraphs 1–57.

59. Plaintiff has a fundamental liberty interest in the care, custody, and control of her children. Defendant Thurman, Richardson and Hobbs, acting under the color of state law, interfered with Plaintiff's parental rights and supported restrictions on her custody without any judicial finding of unfitness or presentation of clear and convincing evidence.

60. The actions and recommendations of all Defendants directly led to severe limitations on Plaintiff's parental time and custodial rights, without meeting the constitutional standard required for such deprivations.

**Legal Argument:**

- **Santosky v. Kramer, 455 U.S. 745 (1982):** Before a state may sever or interfere with parental rights, due process requires that the allegations be supported by at least clear and convincing evidence.

Defendant's failure to uphold this constitutional standard resulted in a violation of Plaintiff's due process rights under the Fourteenth Amendment.

## COUNT VII: STATE-CREATED DANGER DOCTRINE (14th AMENDMENT)

61. Plaintiff realleges paragraphs 1–60.

62. Defendants, while acting under color of state law, facilitated or allowed the placement of Plaintiff's children into an environment that posed known risks of psychological or emotional harm.

63. Rather than acting to mitigate or prevent harm, Defendants actively discouraged investigation and retaliated against Plaintiff for raising concerns, thereby affirmatively increasing the risk to the children.

**Legal Argument:**

- **Kallstrom v. City of Columbus, 136 F.3d 1055 (6th Cir. 1998):** State actors may be held liable under the "state-created danger" doctrine when their actions create or increase danger to individuals.

Defendant's conduct in enabling the ongoing harm and retaliating against protective efforts violated the substantive due process rights of both Plaintiff and her children.

---

### COUNT VIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (FLORIDA STATE TORT CLAIM)

64. Plaintiff realleges paragraphs 1–63.

65. Defendant's conduct was intentional, outrageous, and beyond all bounds of decency expected in a civilized society. Defendants knowingly made false or biased recommendations, retaliated against Plaintiff for exercising her rights, and ignored credible reports of harm to Plaintiff's children.

66. As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress, anguish, and trauma.

**Legal Argument:**

Under Florida law, a claim for Intentional Infliction of Emotional Distress requires:

1. Extreme and outrageous conduct;
2. Intent or recklessness;
3. Causation;
4. Severe emotional distress.

- **Metropolitan Life Ins. Co. v. McCarson,** 467 So. 2d 277, 278 (Fla. 1985).

the Florida Supreme Court held that to prove intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant engaged in conduct that was both intentional or reckless, and outrageous, and that this conduct caused the plaintiff severe emotional distress.

- **Liberty Mutual Ins. Co. v. Steadman**, 968 So. 2d 592 (Fla. 2d DCA 2007)

"Outrageous conduct" must be so extreme as to go beyond all bounds of decency.

- **Dominguez v. Equitable Life Assurance Soc'y**, 438 So. 2d 58 (Fla. 3d DCA 1983)

IIED claim upheld where defendant's intentional actions caused prolonged emotional harm.

This claim is brought under the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## COUNT IX: VIOLATION OF EQUAL PROTECTION CLAUSE (14th AMENDMENT)

67. Plaintiff realleges paragraphs 1–66 as if fully set forth herein.

68. The Equal Protection Clause of the Fourteenth Amendment prohibits state actors from treating similarly situated individuals differently based on impermissible classifications, including gender, personal bias, or arbitrary distinctions.

69. Defendants, acting under color of state law as a court-appointed Guardian ad Litem, and Judge Hobbs intentionally and consistently treated Plaintiff less favorably than the children's father throughout the custody proceedings.

70. Plaintiff was denied parental rights, access to her children, and a fair hearing, while the father was given preferential treatment—even in the face of credible allegations of abuse and misconduct.

71. Defendants ignored or minimized reports submitted by Plaintiff but accepted the father's statements without scrutiny. Defendants also retaliated against Plaintiff for protected speech while tolerating misconduct by the father and his counsel.

72. This disparate treatment was not justified by any legitimate governmental interest and was instead motivated by personal bias, gender-based assumptions, and an improper professional alliance between all Defendants.

73. As a direct and proximate result of Defendant's actions, Plaintiff suffered loss of parental rights, emotional distress, reputational harm, and other damages.

**Legal Argument:**

- **Village of Willowbrook v. Olech, 528 U.S. 562 (2000):** Equal Protection applies even in the absence of traditional suspect classifications if the plaintiff was intentionally treated differently without rational basis.

- **Pers. Adm'r of Massachusetts v. Feeney, 442 U.S. 256 (1979):** Discriminatory intent may be inferred from patterns of unequal treatment and the absence of justification.
- **Campbell v. Rainbow City, 434 F.3d 1306 (11th Cir. 2006):** Equal Protection claims may be based on unequal treatment of similarly situated persons when based on bias or animus.

## COUNT X: LIABILITY UNDER MONELL FOR OFFICIAL CAPACITY VIOLATIONS (42 U.S.C. § 1983)

74. Plaintiff realleges paragraphs 1–73 as if fully set forth herein.

75. Defendant Thurman was appointed and acted under color of state law as a Guardian ad Litem (GAL), a role which carries state-authorized responsibilities and power in family court proceedings.

76. Plaintiff sues Defendants in both her individual and official capacities. The official capacity claim constitutes a claim against the policies, customs, or practices of the appointing authority or relevant government entity—namely, the State of Florida and/or the Florida Guardian ad Litem Program.

77. Defendant Thurman and Hobbs actions, including retaliation, suppression of evidence, fabrication of claims, and support for unconstitutional deprivation of parental rights—were committed pursuant to:

- A pattern of deliberate indifference to parental rights,
- An informal custom of allowing GALs to act with unchecked discretion and immunity, and/or
- A failure to adequately supervise, discipline, or train GALs in their constitutional obligations under the Fourteenth and First Amendments.

78. The State of Florida or its delegate agencies Defendant Judge Hobbs failed to implement appropriate training or oversight mechanisms that would have prevented the unconstitutional conduct Plaintiff experienced.

79. All Defendant's conduct reflects a systemic failure within the Florida GAL system to safeguard constitutional rights, especially in high-conflict custody disputes involving parental alienation, conflicts of interest, or retaliation.

80. As a direct and proximate result, Plaintiff suffered the loss of parental rights, emotional harm, reputational damage, and other injuries as described above.

**Legal Argument:**

- **Monell v. Department of Social Services**, 436 U.S. 658 (1978):
  The Supreme Court held that local governments and their officials, when sued in their official capacities, can be held liable under 42 U.S.C. § 1983 when a constitutional violation results from an official policy, widespread custom, or a failure to train that reflects deliberate indifference to constitutional rights.
- **City of Canton v. Harris**, 489 U.S. 378 (1989):
  A municipality or agency may be liable under § 1983 for failure to train employees if the failure reflects a deliberate indifference to the rights of persons with whom the officials come into contact. This standard applies equally to court-appointed officials performing state-sanctioned duties, such as GALs.
- **Pembaur v. City of Cincinnati**, 475 U.S. 469 (1986):
  A single decision by a policymaker with final authority may also constitute an official policy under § 1983.
- **Grech v. Clayton County., Ga.**, 335 F.3d 1326 (11th Cir. 2003):
  The Eleventh Circuit reaffirmed that § 1983 municipal liability can arise from both affirmatively established policies and failures to train or supervise that amount to deliberate indifference to constitutional violations.

## COUNT XI: JUDICIAL MISCONDUCT OUTSIDE JUDICIAL CAPACITY

81. Plaintiff realleges paragraphs 1–80 as if fully set forth herein.

82. Judge Barbara Hobbs acted outside the scope of her judicial immunity by participating in acts that were administrative, conspiratorial, or retaliatory in nature, including but not limited to:

- Conducting ex parte hearings that denied Plaintiff the right to be heard;
- ex parte communication with other Defendants;
- Signing custody orders materially different from what was stated in court proceedings;
- Ignoring appellate rulings and failing to correct errors remanded by higher courts;
- Refusing to schedule or consider Plaintiff's motions, especially those raising constitutional violations or safety concerns;
- Demonstrating a pattern of animus and punitive behavior against Plaintiff following protected speech and legal filings.

83. Plaintiff suffered constitutional injury as a direct result, including the deprivation of due process and the erosion of her parental rights.

**Legal Argument:**

- **Stump v. Sparkman, 435 U.S. 349 (1978)** – very hard to overcome judicial immunity
- **Forrester v. White, 484 U.S. 219 (1988)** – nonjudicial acts not protected. These actions fall outside the boundaries of judicial immunity as defined by *Forrester v. White*, 484 U.S. 219 (1988), because they were administrative, retaliatory, or nonjudicial in nature and not taken in the course of legitimate judicial decision-making.

**Count XII – 42 U.S.C. § 1983 – Conspiracy to Violate Fourth and Fourteenth Amendment Rights**

84. Plaintiff realleges paragraphs 1–83 as if fully set forth herein.

85. All Defendants jointly engaged in a conspiracy to deprive Plaintiff of her federally protected rights to privacy, due process, and familial association. This included:

- Unlawful access to private communications;
- Falsified abuse claims to weaponize the family court process;
- Interference with reunification and parental bonding;
- Encouraging or participating in the emotional manipulation of minor children against their mother.

86. These acts were taken in furtherance of a joint plan between private individuals and state actors, and constitute action under color of law in violation of 42 U.S.C. § 1983.

87. As a direct result, Plaintiff suffered loss of custodial and emotional relationship with her children, reputational harm, and ongoing emotional distress.

**Legal Argument:**

- **Dennis v. Sparks, 449 U.S. 24 (1980)**

Private individuals who conspire with a judge or state official to deprive someone of constitutional rights can be held liable under § 1983.

- **Tower v. Glover, 467 U.S. 914 (1984)**

Public defenders and private attorneys can be sued under § 1983 if they conspire with state actors to deprive someone of constitutional rights.

- **Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)**

Conspiracy between a private actor and a state actor to deny constitutional rights is actionable under § 1983.

- **Troxel v. Granville, 530 U.S. 57 (2000)**

The interest of parents in the care, custody, and control of their children is a fundamental liberty interest protected by the Fourteenth Amendment.

- **Santosky v. Kramer, 455 U.S. 745 (1982)**

A parent's rights to the custody and companionship of their children cannot be terminated without due process and strict procedural protections.

- **Quilloin v. Walcott, 434 U.S. 246 (1978)**

Parental rights are constitutionally protected and may not be infringed by state action absent a compelling justification.

- **Wallis v. Spencer, 202 F.3d 1126 (9th Cir. 2000)**

Parents have a well-established constitutional right not to be separated from their children without due process of law.

- **Croft v. Westmoreland County Children and Youth Servs., 103 F.3d 1123 (3d Cir. 1997)**

A state official may not interfere with the parent-child relationship without evidence of immediate danger; otherwise, it violates due process.

- **Kirkpatrick v. County. of Washoe, 843 F.3d 784 (9th Cir. 2016)**

Even temporary separation of a parent from a child implicates the parent's constitutional rights.

- **Katz v. United States, 389 U.S. 347 (1967)**

The Fourth Amendment protects people, not places; what a person seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.

- **Kyllo v. United States, 533 U.S. 27 (2001)**

Any government or government-aligned intrusion into the privacy of a person's home or personal communications may be a search requiring a warrant.

- **Griffin v. Breckenridge, 403 U.S. 88 (1971)**

§ 1985(3) covers conspiracies among private individuals to deprive others of their constitutional rights, particularly when there's animus (e.g., gender-based).

- **Mapp v. Ohio, 367 U.S. 643 (1961)**

the Supreme Court ruled that evidence obtained in violation of the Fourth Amendment is inadmissible in both state and federal court proceedings. This decision established the exclusionary rule at the state level

- **Garrity v. New Jersey, 385 U.S. 493 (1967)**

The use of illegally obtained or coerced evidence in a proceeding violates substantive due process under the Fourteenth Amendment.

- **Stump v. Sparkman, 435 U.S. 349 (1978)**

Even judges lose immunity if they act in the clear absence of jurisdiction. If a judge knowingly relies on fabricated or illegally obtained evidence in suspending a parent's rights, the underlying order may be constitutionally invalid.

- **Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000)**

A child's removal based on fabricated reports and unsupported allegations of abuse is a violation of the parent's Fourteenth Amendment liberty interest in the family relationship.

- **Hughes v. Long, 242 F.3d 121 (3d Cir. 2001)**

A guardian ad litem and private parties can be liable under § 1983 if they participate in using false or illegally obtained evidence to interfere with custody rights.

---

## ADDITIONAL LEGAL CITATION:

### I. GENERAL § 1983 PRINCIPLES

- **Monroe v. Pape, 365 U.S. 167 (1961)**

the Supreme Court established that 42 U.S.C. § 1983, a federal statute, provides a remedy for violations of constitutional rights by individuals acting under the "color of state law". This means that if state officials, like police officers, violate someone's constitutional rights while performing their official duties, the injured party can sue them in federal court under § 1983.

- **West v. Atkins, 487 U.S. 42 (1988)**

the Supreme Court established that a private actor can be considered a state actor under § 1983 if they are performing a function "traditionally exclusively reserved to the State". This means that if a private individual or entity takes on a role or responsibility that is typically handled by the government, they can be held liable under § 1983 for violating constitutional rights

### IV. GUARDIAN AD LITEM LIABILITY UNDER § 1983

GALs can sometimes be sued under § 1983 if they act **outside their quasi-judicial role** or in **collusion** with other actors to deprive constitutional rights.

- **Meeker v. Kercher, 782 F.2d 153 (10th Cir. 1986)**

Guardian ad litem not entitled to absolute immunity if acting outside traditional advocate role or engaging in misconduct.

- **Hilliard v. Ferguson, 30 F.3d 649 (5th Cir. 1994)**

State officials and private individuals acting jointly (conspiracy) to violate rights may be liable under § 1983.

- **Rayburn v. Hogue, 241 F.3d 1341 (11th Cir. 2001)**

Private actors jointly engaged with state officials in a conspiracy to deprive constitutional rights act "under color of law" for § 1983 purposes.

## REQUEST FOR APPOINTMENT OF COUNSEL

Plaintiff respectfully requests that the Court appoint counsel pursuant to 28 U.S.C. § 1915(e)(1). This case involves complex constitutional and statutory claims under 42 U.S.C. § 1983, including alleged violations of due process, equal protection, and First Amendment rights, as well as claims concerning official immunity and state-created danger. Given the complexity of the legal issues, the Plaintiff's limited legal training, and the stakes involved in the loss of parental rights, Plaintiff believes that the interests of justice require the appointment of counsel.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

**A.** Enter judgment in her favor against Defendants;

**B.** Award compensatory damages in an amount to be determined at trial; for the emotional distress, loss of parental rights, reputational harm, and other injuries suffered as a result of Defendant's unconstitutional and tortious conduct

**C.** Award punitive damages to punish and deter Defendants for her willful, malicious, and reckless violation of Plaintiff's constitutional rights;

**D.** Void/Vacate any orders signed by Judge Hobbs that are incorrect or misleading to the facts and violations to constitutional and amendment rights;

**E.** Grant declaratory relief pursuant to 28 U.S.C. § 2201, declaring that Defendant's actions violated Plaintiff's constitutional rights under the First and Fourteenth Amendments to the United States Constitution;

**F.** Grant preliminary and permanent injunctive relief prohibiting Defendants from continuing to interfere with Plaintiff's parental rights, retaliating against her for protected activity, or engaging in further constitutional violations, and directing state court review of custody arrangements in a manner consistent with federal constitutional standards;

**G.** Award Nominal Damages in the event the Court finds actual injury minimal, but constitutional rights were violated;

**H.** Order Reinstatement of Parental Time or Access, or other equitable relief as the Court deems just and proper to protect Plaintiff's constitutional rights and the welfare of the children;

**I.** Award reasonable attorney's fees and costs under 42 U.S.C. § 1988;

**J.** Retain Jurisdiction over this case to ensure compliance with any injunctive relief granted; and;

**K.** Order such equitable relief as necessary to address systemic failures, including mandating proper training, supervision, and accountability mechanisms for Guardian ad Litem conduct in future cases to prevent further constitutional violations;

**L.** Grant such other relief as the Court deems just and proper.

---

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

I, Susan Jennings, declare under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information, and belief.

Executed this 21 day of July, 2025.

*[signature]*

Respectfully submitted,

**Susan Jennings**
Pro Se Plaintiff
2205 Pimlico Drive
Ridgeville, SC 29472
appletree6115@gmail.com

